IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

TONYA JUSTICE, as Administratrix
on behalf of the Estate of
TONEY WALTER KENNEDA,

    Plaintiff,

v.                                CIVIL ACTION NO. 1:23-00211

REHABILITATION HOSPITAL
CORPORATION OF AMERICA, LLC,

    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiff's petition for court approval of plaintiff's proposed distribution of settlement proceeds.  See ECF No. 11.  For the reasons explained below, the court **APPROVES** plaintiff's proposed distribution.

I.

According to the allegations in the amended complaint, on March 19, 2022, Toney Walter Kenneda ("Toney"), then 73 years of age, fractured his left hip as a result of a fall in his home. See Amended Complaint (ECF No. 5) at ¶ 7.  Following hip replacement surgery at Raleigh General Hospital, on March 25, 2022, Kenneda was admitted to Encompass Health Rehabilitation Hospital in Princeton, West Virginia.  See id. at ¶ 8.  At Encompass, Kenneda was to receive two weeks of "inpatient rehabilitation to improve strength, endurance, balance

equilibrium, mobility, and gait to prepare him to return home to live independently." Id. On or about March 28, 2022, Kenneda was sleepwalking and fell on his right hip, suffering a femur fracture. See id. at ¶ 13. Plaintiff alleged that Encompass "deviated from the acceptable standard of care and failed to act as a reasonably prudent staff acting in the same or similar circumstances insofar as it failed to recognize [ ] Kenneda was at high risk for another fall and failed to place measures in place to prevent a fall." See id. at ¶ 12. Kenneda passed away on March 21, 2023. See id. at ¶ 14.

On May 4, 2023, Tonya Justice, Toney Kenneda's daughter, filed an amended complaint against defendant Rehabilitation Hospital Corporation of America, LLC d/b/a Encompass Health Rehabilitation Hospital of Princeton.[1] Justice was the administrator of the Estate of Toney Walter Kenneda. See id. at ¶ 1. In her amended complaint, Justice alleges that "[a]s a direct and proximate result of Defendant's acts, omissions, and/or conduct, Toney Walter Kenneda later suffered his untimely and wrongful death. . . ." See id. at ¶ 14. As a result of Kenneda's alleged wrongful death, plaintiff sought damages, including but not limited to:

---

[1] The original complaint was filed by Toney Kenneda on March 15, 2023, shortly before his death. See ECF No. 1.

1. damages for Toney Walter Kenneda's pain and
   suffering from the time of the injury to death
   pursuant to W. Va. Code § 55-7-8;

2. sorrow, mental anguish, and solace which may include
   society, companionship, comfort, guidance, kindly
   offices and advice of Toney Walter Kenneda;

3. compensation for reasonably expected services,
   protection, care and assistance provided by Toney
   Walter Kenneda;

4. reasonable funeral expenses; and

5. other expenses incurred as a result of his wrongful
   death.

See id. ¶ 14.

On May 23, 2023, the case was mediated and settled. See
ECF Nos. 8, 9, and 10. Thereafter, on June 30, 2023, plaintiff
filed her verified petition to settle the wrongful death claim
and for approval of distribution on settlement proceeds. See
ECF No. 11. The petition was filed pursuant to West Virginia
Code § 55-7-7 for the purpose of seeking and obtaining the
court's approval of the settlement. See id. The petition
identified the following persons as potential statutory
beneficiaries of the wrongful death settlement proceeds,
pursuant to West Virginia Code § 55-7-6(b): Tonya Justice
(daughter); Shannon Kenneda (daughter); Amanda Corns (daughter);
Brad Kennedy (brother); Tom Kennedy (brother); Lloyd "Charlie"
Kenneda (brother); and Carnitta Kenneda Cline (sister). Also

identified as a potential beneficiary was Lavetta May alleged to be decedent's daughter.  See id.

Plaintiff proposed that the settlement proceeds be distributed equally among herself, Shannon Kenneda, and Amanda Corns.  All potential beneficiaries consented to the proposed settlement and distribution except for Brad Kennedy, Tom Kennedy, and Lavetta May.

The court held a hearing on the Verified Petition on July 11, 2023.  Present at that hearing were potential beneficiaries: Tonya Lynn Justice, Shannon Kennedy, Amanda Corns, Brad Kennedy, Tom Kennedy, and Lavetta May.  None of the proposed beneficiaries objected to the amount of the settlement and, accordingly, the court approved the settlement.

Tonya Justice testified at the hearing.  According to Justice, during her father's last year of life, she spent a majority of it with him.  Justice testified that, during their time together, they had numerous discussions about how he wanted his affairs handled after his death.  According to Justice, it was important to her father that she "take care" of her sisters and to split things evenly between the three of them.  Justice indicated that there was an unsigned will that expressed as much.  She testified that the will was prepared shortly before her father's fall and that he was too ill to ever have it signed and witnessed.

Of Lavetta May, Justice testified that she did not know her and that, to her knowledge, her father's only children were herself, her two sisters, and a deceased brother.

Ms. May addressed the court as well.  She maintained that she was decedent's daughter.  According to her, she had contact with decedent privately and sometimes talked to him on the phone.  She informed the court that her uncles knew about her paternity but neither Brad nor Tom Kennedy addressed May's claim during the hearing.  May asked the court for time to obtain a DNA test and get proof that she was Toney's daughter.

Tom and Brad Kennedy, decedent's brothers, also addressed the court.  Both felt that they were entitled to a share of the settlement proceeds because they had cooperated in the lawsuit and were close to their brother.

Following the hearing, the court approved the amount of the settlement and gave Lavetta May an opportunity to submit proof on behalf of claim.  Thereafter, through counsel for the Estate, May submitted a DNA Report which on its face said the results were "Inconclusive."  Whereupon, the court gave all "potential beneficiaries who are objecting to the proposed distribution an additional 30 days to submit further evidence in support of their claim(s).  If no further evidence is provided, the court will approve the distribution as proposed by the administratrix."  No additional information was forthcoming.

II.

The "purpose of the wrongful death act is to compensate the
beneficiaries for the loss they have suffered as a result of the
decedent's death."  White v. Gosiene, 420 S.E.2d 567, 573 (W.
Va. 1992).  Pursuant to West Virginia Code ¶ 57-7-7:

> The personal representative of the deceased may
> compromise any claim to damages arising under section
> five of this article before or after action brought.
> What is received by the personal representative under
> the compromise shall be treated as if recovered by him
> in an action under the section last mentioned. . . .
> Upon approval of the compromise, the court shall
> apportion and distribute such damages, or the
> compromise agreed upon, after making provisions for
> those expenditures, if any, specified in subdivision
> (2), subsection (c), section six of this article in
> the same manner as in the cases tried without a jury.

Judicial approval is required for settlements under the Act even
where the beneficiaries are adults.  See Stone v. CSX Transp.,
Inc., 10 F. Supp.2d 602, 605 (S.D.W. Va. 1998) (Chambers, J.).
Not only does the court approve the settlement it also must
determine how any settlement proceeds are to be distributed.
West Virginia Code 55-7-6(b) provides that:

>    (b) In every such action for wrongful death, the
> jury, or in a case tried without a jury, the court,
> may award such damages as it may seem fair and just,
> and, may direct in what proportions the damages shall
> be distributed to the surviving spouse and children,
> including adopted children and stepchildren, brothers,
> sisters, parents and any persons who were financially
> dependent upon the decedent at the time of his or her
> death or would otherwise be equitably entitled to
> share in such distribution after making provision for
> those expenditures, if any specified in subdivision
> (2), subsection (c) of this section.  If there are no

6

such survivors, then the damages shall be distributed
in accordance with the decedent's will or, if there is
no will, in accordance with the laws of descent and
distribution as set forth in chapter forty-two of this
code.  If the jury renders only a general verdict on
damages and does not provide for the distribution
thereof, the court shall distribute the damages in
accordance with the provision of this subsection.

(emphasis added).  West Virginia's highest court has confirmed
that a court has "wide discretion" in determining how settlement
proceeds in a wrongful death action should be distributed.
Graham v. Asbury, 765 S.E.2d 175, 181 n.10 (W. Va. 2014) ("While
we find the circuit court did not abuse its discretion in
awarding Mr. Asbury, as the administrator of the estate of Betty
Asbury, an equal share in the present case, we emphasize that,
in general, a circuit court is not required to award equal
shares to all persons who are distributees under the wrongful
death act.  Instead, pursuant to W. Va. Code § 55-7-6(b), a
circuit court or jury has wide discretion to award wrongful
death damages in proportions that may seem fair and just under
the facts of a particular case.") (internal citations and
quotations omitted).

In this case, the court finds that plaintiff's proposed
distribution is fair and just.  First, as Tonya Justice
testified, the proposed distribution is consistent with the
decedent's wishes.  And, although the wrongful death statute
does not express a preference for children over siblings, the

laws of intestacy in West Virginia do.  See W. Va. Code. § 42-1-3a (providing that, when a person dies intestate and without a surviving spouse, children are first to inherit the estate). The court understands that it has wide discretion over distribution of the settlement proceeds and that it is under no obligation to award settlement proceeds to decedent's daughters instead of or in addition to his siblings.  However, given defendant's expressed desire to provide for his children, the court finds the proposed distribution to be reasonable.

As for Lavetta May, she failed to offer sufficient information for this court to conclude that she was decedent's daughter.  As noted above, the DNA results were inconclusive[2] and no further evidence was offered in support of her claim.  In any event, even if she had shown that decedent was her father, the court was under no obligation to award her a share of the settlement proceeds in any amount.  See Graham, 765 S.E.2d at 181 n.10.

---

[2] "The scientific reliability of DNA evidence has been well-established by th[e Supreme Court of Appeals of West Virginia] for years."  Ryan v. Rickman, 584 S.E.2d 502, 504 n.2 (W. Va. 2003).  In Ryan, the court found that DNA evidence showing a 98.9% probability of siblingship was substantial evidence to establish that decedent was plaintiff's biological father.  See id. at 504.  In this case, however, the DNA evidence did not establish a high probability of kinship nor was any evidence offered to show that the results should be interpreted to confirm May's claim.

8

For all these reasons, the court concludes that plaintiff's proposed distribution is fair and just and it is **APPROVED**.   The Clerk is directed to remove this case from the court's active docket.

The Clerk is directed to send a copy of this Order to counsel of record.   Plaintiff's attorney is directed to provide a copy of this order to the statutory potential beneficiaries.

**IT IS SO ORDERED** this 31st day of January, 2024.

ENTER:

David A. Faber
Senior United States District Judge